Our final case this morning is Fraunhofer-Gesellschaft Sirus XM Radio 2023-22-67 Good morning, Your Honors, and may it please the Court. The District Court erred in granting summary judgment of implied license based on equitable estoppel. Sirius XM simply failed to meet its burden to present undisputed evidence satisfying any of the three equitable estoppel factors. In fact, the page and a half that Sirius XM dedicated to this issue in its opening papers before the District Court failed to present any facts from which anyone could reasonably find that any of those three elements was satisfied. Really? No facts that would enable a jury to conclude there was equitable estoppel? We believe so, Your Honor, and that's why we've asked that not only should the District Court's decision be reversed, but that summary judgment should be granted. But you can't do that, right? You can't appeal. Well, Your Honor, if you look at the Crown Packaging case, for example, that's a case where this is a legal issue. That's a pure legal issue. I understand, Your Honor. In this case, we think that the utter failure of evidence on the reliance issue in particular leaves it an avenue for granting summary judgment. And jury couldn't infer that there was reliance here when they paid one girl the special fee to make the thing irrevocable and went ahead and did something that required a license and they were going to be non-infringing? So you have to look at the evidence that was actually presented in the record. And the question on reliance is not simply was there reliance on something or, as Sirius XM would put it, was there some consideration of options, option one or option B? Sirius XM says we had two options, high ban or low ban. They thought they had a license, right? And that's part of the point, Your Honor. Doesn't the record show that they thought they had a license? This was not the main argument that they presented, but it is true that Sirius XM did point to one of their witnesses who said we believe that we had an irrevocable sublicense. Your Honor, that is not reliance on something that Fraunhofer did. Ackerman and other cases from this court make clear that reliance has to be substantial reliance on the misleading action or inaction of the patentee. In this case, what do we have on the sublicense point? We have a witness who said, well, we put in the word irrevocable and so we thought that the sublicense could not be terminated. Well, this court in 2019 already rejected that interpretive argument, but setting aside whether that was a good argument or a bad argument, a good conclusion or a bad conclusion, it was a conclusion that was internal to Sirius XM, something that they decided based on their own assessment. But the fact that they think they have a license, if there was misleading conduct here that suggested that there was a license or there wasn't a problem, they can rely on that as having given them a license, right? They could have relied on it if there were a finding that there was misleading conduct. Setting that aside, the question is, did Sirius XM present actual evidence that they did rely? And there was no such evidence in the record whatsoever. In fact, what the record primarily shows, including the very citations relied upon by the district court, is that the decision to go with the high band system was motivated by something completely different, what Judge Battalion called business pragmatics. Something completely different. They assumed they had a license and in that circumstance they made a choice between the high band and the low band. I mean, that's their view, that a jury could perhaps infer that. Now, you may have a better argument about summary judgment, but to say that there's no evidence here that would allow a jury to conclude that there was reliance seems to me, you know, maybe a little far. I would say, Your Honor, that reliance on the business pragmatics is utterly inadequate for a jury to conclude that there was reliance on misleading action by Fraunhofer. There simply is no evidence in the record of that. The evidence that we do have from Wadden, from Burks, Krajewski, Karkos, all focused on that business issue. And we see from cases like Hemstreet, looking at an internal business issue, not reliance. You see a lot of statements from Sirius XM, statements that, well, we were enrolled in a security attorney argument in a brief. At most, what we have is conclusory post hoc statements of the sort that this Court has repeatedly found does not suffice to establish summary judgment for the party urging equitable estoppel. That's in cases like Hall and Myers and Gasser Chair, over and over again. Those kind of conclusory self-serving statements are not enough. You need actual evidence. And no such evidence was presented here of reliance on something that Fraunhofer did or did not do. Your Honor, summary judgment was inappropriate. Summary judgment for Sirius XM was inappropriate. And we would submit that, in fact, summary judgment would be appropriate for Fraunhofer based on the utter failure to satisfy the reliance element. I do want to touch on the other elements. Prejudice, same issue. No evidence of actual prejudice that was caused, and this is the key part, that was caused by allegedly misleading conduct by Fraunhofer. And what this Court has said is that simply pointing to, for example, expenditures made isn't going to cut it to show prejudice, to show harm, especially if there's no evidence that that's money that just would have been spent anyway. Here, there's no evidence. If you look at the citations, the citations that Sirius XM provides do not support the idea that there were hundreds of millions of dollars spent on infrastructure. But even so, there also is a lack of evidence showing that that was money that would have been spent anyway. Either way, high band or low band, you've got a satellite radio system, you need satellites, you need infrastructure. They're prejudiced because all of a sudden they're in a situation where they're being sued for infringement, whereas if they'd gone with a low band option, that wouldn't have been a problem. The problem, Your Honor, is that... Is that not true? They would have been a problem because there was no way for them to do it right away. And that's what Mr. Wadden, for example, consistently testified. He said we were in big trouble because this was going to take us years and years and years to wean ourselves off of one side or the other. So they would have had a lot less exposure though, right, if they'd gone with a low band option? We don't know what the overall outcome would be because Sirius XM didn't put in evidence. For all we know, Sirius XM reached tremendous rewards from receiving the benefits of the high band system, and there was just no evidence that they were put back. Certainly there's no, for example, this is not a situation where Sirius XM created a system and now can't use it because there's a risk of an injunction. The patent's expired. They have the high band system. It's working great, and they're using it. I have to say on the first element, misleading, where Sirius XM has claimed that there was extensive ongoing engagement between 2010 and 2015 and that it's plausible to infer from that that there was some sort of indication from patents. You were trying to collect for that work, right? I don't know what you mean. You're trying to collect, after 2011 you were trying to collect money for the work that was done earlier, right? Yes, that is definitely correct. And we'd submit that even if you accept the argument, which we don't, but if you accept the argument that you could have inferred from the simple fact that even if you say that's a plausible inference, we don't think it gets close to being the only possible inference, which is what Ackermann demands. There are so many fact issues here. We disagree on the facts, the nature of the interaction between the parties, as well as the inferences to be drawn. I do want to address two other issues just very briefly. We'll submit on the rest. There's another defect in SiriusXM's implied license case, which is the presence of an express contract between the parties on the same subject matter. And this Court has made clear in cases like Endo and Atlas that having that express license, this Court is not going to go in and try to rewrite the parties' argument. Here, we have an especially bad case for an implied license, because it's not just that the FFPC was silent. Can you identify any case where an implied license as a result of equitable estoppel has been denied because there was a contract between the parties? I can't, Your Honor, because, in fact, SiriusXM's theory is something that has never been, I haven't seen this theory adopted in any case of this Court, that's for certain. On the implied license, the FFPC is not just an agreement that is silent. It actually expressly excludes the patents at issue in this case. And all of the deposition testimony that we got from all of SiriusXM's witnesses confirmed the selfsame thing, that there was a caveat for these patents, that there was a carve-out for these patents, again and again, and we cited that testimony. And I'd submit that it would be highly improper to find an implied license in that case. Finally, again, briefly, even in setting aside all of the other issues that we've addressed, we'd submit that it was highly improper to dispose of this case entirely based on a defense that was only raised for the 2010 termination theory. Fraunhofer had multiple theories under which SiriusXM's activity was unlicensed. This Court knows that because it pointed out that Fraunhofer had multiple theories in its 2019 decision in this very case. SiriusXM has conceded that its defense here, its motion, was explicitly assumed that the sub-license terminated in 2010. That's from page 60 of their brief. And so to have the district court go on and decide that this one defense on this one theory somehow wiped out the other case, the entire case... Did it hit arguments on the other theories? There was no oral argument at all on any of this. So we'd submit that remand at a minimum is needed for that. If there are no other questions, I'll reserve the rest of my time. Let me see this for you. Mr. Baird, this area. Thank you, Your Honor. No tease, the Court. It's a real head-scratcher, it seems to me, that you didn't put in any direct testimony by your witnesses about reliance. Literally, it's... Well, Your Honor, I think that there is some direct evidence on the point of reliance, and that is Mr. Waddeen's testimony in connection with that everything they were doing with Fraunhofer matched up with their irrevocable license and the amendments to that license that the parties entered into. Okay, but that falls a bit short of saying we relied on Fraunhofer's statements or silence. It may well be. I mean, it seems logical that they would have relied on it, but you don't have any testimony to that effect. The only testimony that was submitted that the District Court did not consider in connection with our motion was the declaration submitted by Mr. Waddeen providing that type of direct evidence. If this Court believes it needs that sort of evidence, that declaration would fill that. What did Mr. Waddeen say? What Mr. Waddeen said, if Fraunhofer had raised the issue of infringement, Sirius XM would have taken a different course of action under the circumstances because this is a case of silence plus conduct, which gets to the misleading prong of reliance. And as far as the evidence of reliance, Your Honor, okay, you start with the standard. Did the patentee's actions lull the accused infringer into a sense of security in making a decision? And under the circumstance present here. Michael, is there any testimony that your client was lulled into a sense of security? It's just really odd. Well, maybe you could infer it. Maybe a jury could infer it. But for summary judgment, you would expect to see some explicit direct evidence to that. Well, the direct evidence is the circumstance because at the time that that decision was being made, there was pure silence. You would not expect direct evidence, precipient witness testimony in that 2010 timeframe to be able to say that. You could say that for the fact, like Mr. Waddeen did in his declaration. But they could say we thought we had a license and they didn't disabuse us of that and relied on that. Well, I think that is the undisputed evidence here. In the context of making that decision to migrate to the high-band system, I think it's undisputed that everyone knew that the sub-license existed. Everyone knew the connection with the bankruptcy that a settlement agreement had entered into. That's the context in which the decision to migrate to the high-band system was made. And all of that evidence is undisputed. And we go back to the Aukerman standard. We believe it satisfies that. I think that's all true. I mean, I think the record discloses that they assumed they had a license and relied on that. It seems to me that's correct. But that's a little different from saying that your client relied on Fraunhauser's silence to infer that there was no problem. Well, I think I understand the question. I think the reliance element is met because whether you consider it direct or the inference to be made, when making that decision, okay, in that context, it's undisputed that they conducted an extensive analysis about whether to go with the high-band or the non-infringing low-band. That's undisputed. They found the two systems economically and technically equivalent. This is all in the context of Fraunhauser's silence. And then you get the conduct from 2010 to 2015, while they're migrating, that reinforces that decision. They maintain that decision to migrate. So Fraunhauser's not saying anything at all in this context. And the only inference under those circumstances, while they had an alternative option that obviously they didn't go with, they went with the high-band. Had Fraunhauser raised an issue, okay, that changes the equivalency under the circumstances and changes those dynamics. The issue of the display. I'm wondering about the appropriateness of summary judgment here. I mean, this seems to be a lot of issues. The Court says there's no use complicating matters. Assume this, assume that, and ignore this. Why the wait? It looks to me like the Court just jumped in and said, I know what the evidence will show, but don't we need to have it resolve the facts? I don't think so, and here's why. What the Court did here was assume Fraunhauser's theory of the case. Fraunhauser had multiple arguments about why Series 6M no longer had a license. It assumed that Fraunhauser was right about the termination in 2010, about a termination in 2011, and a termination in 2015. And, in fact, the alternative argument we have over the FFPC, he assumed that Fraunhauser was right about that. So let's assume Fraunhauser's right the license terminates. Where do we go from there? What does the undisputed evidence show us? And the Court went through that undisputed evidence. It went through the context of a 12-year relationship, everyone knowing about these licenses, the FFPC, the sublicense, and then the settlement agreement that happened during the bankruptcy. The Series 6M fully evaluated these systems, made a decision to migrate to the high band, all in the context of Fraunhauser's silence, including the ongoing relationship between 2010 and 2015. All of this is laid out in detail in the district court's opinion. And as far as the decision about going to the business pragmatics, that was ultimately a tiebreaker. And they went, they used those business pragmatics as a tiebreaker between the two. Had Fraunhauser raised the issue of infringement, the equivalency is no longer there. That tiebreaker turns, and it's reasonable to infer, that you would go with the low band system under those circumstances and not the high band system. When did Fraunhauser know about the implied license? When did Fraunhauser know about our sublicense? Your sublicense. It's undisputed as of 2009. Fraunhauser knew about the existence of the sublicense because it was publicly disclosed in connection with the bankruptcy proceedings. So there's no dispute. From the low band to the high band, when did that occur relative to what you just said? Okay. That migration occurred between the 2010 and 2015 time frame.  No. Well, actually, it didn't occur earlier. It actually occurred after that point in time. In fact, the district court addressed this, that it was a gradual migration from 2010 to 2015 and beyond. And that's why the migration is not a light switch, Your Honor. This doesn't, you don't snap your fingers and it changes. It happened over a period of time, and the undisputed evidence shows that it really didn't get going until about 2013. The point that the district court did, it assumed, it seems to me, though, that the question as to whether a sublicense existed, a valid sublicense existed, should have occurred when the migration was first thought out or planned. You're dealing with two different companies. You're migrating the activities of one to the other. These are sophisticated business people dealing with intellectual property issues. It seems to me that at that point, when you're thinking about migration, that there should have been some alert as to the existence of a sublicense. Well, Your Honor, under the circumstances, and for purposes of equitable estoppel, okay, we look at things from the perspective of the accused infringer. And in light of the silence by Fraunhofer under those circumstances and the undisputed events that occurred, it's that silence plus conduct that results in satisfying the misleading element here. There is no case law in a silence plus conduct scenario where the onus is put on the accused infringer to raise an issue in the circumstances we have here. Counsel mentioned the Hemstreet case. Hemstreet involved a situation where the patentee alerted the accused infringer of an infringement issue, and there was back and forth between them. All the cases that counsel mentioned in the context of equitable estoppel were not silence plus conduct cases. They were cases where the patentee raised the issue of infringement, and there was back and forth between the parties on that issue. Here, now the situation is this court's case in High Point where it's a silence plus conduct case. That's what we have here, and I submitted to the court that there is a... We understand the silence. What was the conduct? Well, the conduct was... And I say that because in a lot of these cases, you have something apart from just pure silence. You may have a letter that tells somebody or murders somebody as to that patents don't exist or a certain interest is vested. So what do you have here? What you have here, Your Honor, is the entirety of the relationship from 2010 to 2015. You have ongoing work on the high-band system with this hierarchical decoder. You have Fraunhofer securing a third-party license for SiriusXM for the very high-band system we're talking about. You have an amendment to the FFPC between the parties where in-house counsel and principals are talking to each other. You have ongoing meetings four times a year between 2010 and 2012 and then subsequent meetings after that. You have audio technology work happening between the parties, and that audio technology, that coding, is something that's transmitted over the high-band system. In addition to that, you have, starting in August 2012, you have Fraunhofer and SiriusXM engineers having the wonky engineering discussions about, well, maybe we can enhance the system. And even in August 2012, as part of that email exchange cited by the district court, and this is APPX 6022 to 6028, one of SiriusXM's engineers tells one of Fraunhofer's engineers in the context of trying to figure out how to enhance the high-band, as you're aware, Liberty Media may want to gain control of SiriusXM. Our group has met with the CEO of Liberty Media, and our impression is that he's willing to invest in new ideas to keep satellite radio relevant and to potentially expand into Europe. If Liberty Media gains control, we'll make a proposal. These are the type of ordinary discussions in that context that, from SiriusXM's perspective, you would think, these guys aren't about to enforce their patent rights against us. And that's what satisfies the standard here. By October of 2012, they have meetings talking about expanding the high-band system, about business synergies. All this stuff is happening. And then by May of 2013, they're talking about, and this is one of Fraunhofer's principals talking to one of SiriusXM's engineers. As you know, we still count on people forming a well-known circle around the old XM Fraunhofer team, but also new people around further satellite and terrestrial activities. These sort of communications, this is the plus conduct that Your Honor is referring to. It is part of the ordinary relationship that was happening between 2012 and 2015 in the context of a known sub-license. You put all that together, that's the plus conduct that gets you to the misleading nature of what occurred here. Let me address this issue about is this an implied license case or is this an equitable estoppel case? This is an equitable estoppel case. And if you look at what the district court did, if you look at what we argued, we argued three elements of equitable estoppel. And in fact, this court in the Wang case made very clear the distinction between what an implied license case covers and what an equitable estoppel case covers. And the primary difference in implied license cases is looking for an affirmative grant of consent. Equitable estoppel is looking for misleading conduct that suggests that the patentee will not enforce their rights. Let me address the prejudice point. I think prejudice was undisputed below. That's what the district court said. Fraunhofer has tried to raise some prejudice arguments here. We think prejudice is easily satisfied under the circumstances simply because there was a change in economic position. By migrating to the high-band system, the increase in high-band receivers that were implemented at that point in time clearly shows prejudice because we were, in fact, expanding the high-band system. One last point for the court. Counsel mentioned about instantaneously changing from the high-band to the low-band. Again, that's not required here under the circumstances. If the court has... I'm happy to answer any other questions the court may have. Thank you, Your Honor. Thank you, counsel. Mr. McPhee has some rebuttal time. Yes. The district court made clear what it was ruling on. It was ruling on the actual motion that SiriusXM filed, which was on implied license. It referred to DI-638, and that's what we're talking about here. There was no separate, stand-alone equitable estoppel issue raised. Well, the district judge clearly understood that he was ruling on equitable estoppel. I'm sorry, what are you talking about? It's... So what SiriusXM argued was that they had an implied license based on an equitable estoppel theory. That is the motion that the court directed. Yes, exactly. So good. On the Waddington Declaration, there was a reference to that. I'll just point out that SiriusXM did not rely upon the Waddington Declaration on appeal in support of the district court's grant of summary judgment. They only relied upon it in connection with Fraunhofer's request for summary judgment on that issue. And in any event, that declaration is exactly the kind of conclusory post-hoc statement that we talked about in Hall, Myers, Gasser, Chair, that is insufficient to show the support of finding a summary judgment. On the question of the assumptions that the district court made, it is a problem. And in fact, what the district court did, if you look at pages 2 and 3 of its decision, it essentially said, assume that there was a termination in 2010 and that there was a termination in 2015 and that somehow it terminated with respect to the merger, the failure to assign. Well, that was never Fraunhofer's argument, and it makes no sense. You can only have one termination. If we were to reverse this back on the implied license issue, are there any other issues that would be impacted by our decision the whole case would move forward towards trial? Is that what would happen? Yes, so we believe that the case should go back. There are a pile of summary judgment motions that were filed by both sides, including affirmative motions by Fraunhofer, Dobbert motions, those things would need to be resolved and we should get to trial. This case has been pending for over eight years now, so we think it's more than ready for that. Finally, I'll just mention on the misleading prong, which my friend here spent quite a bit of time on, I will just say the bottom line is this. There are meaningful disputed facts, at a minimum, as to the nature of the party's relationship between 2010 and 2015. SiriusXM has claimed that and went through the litany of what they believe represents extensive ongoing engagements between 2010 and 2015. They say it was business as usual. They say it was an ordinary business relationship. We strongly dispute that. We don't believe that's supported by the facts. We've pointed to contrary evidence in the record. And so there's, at a minimum, a dispute of fact on that misleading element, as well as disputes about what inferences can be drawn from those disputed facts. In any event, no matter how you look at it, this is not a case for a summary judgment for SiriusXM. It needs to go back to the district court. If there are no other questions. Thank you, counsel. Thank you to both cases submitted. And that concludes today's argument.